Thank you, Your Honors. Antonio Zaltana, I'm representing the petitioner in this matter, Mr. Perez-Hernandez. Now, in my case, a lot of issues, unfortunately, recently arose through a government's motion to dismiss. Now they're saying for the first time, a couple of days ago, that the issues are both moot and that Mr. Perez lacks standing. Now, as it regards mootness, the government's position is that this court cannot grant Mr. Perez effective relief. Now, we take issue with that because although the moral turpitude determination is not being contested, the illicit trafficker determination is being contested. Assuming that Mr. Perez gets past that, he would be in a position to apply for cancellation of removal. If he gets past what? If he gets past the determination that, the IJ's determination that he's an illicit trafficker. If he gets past that, it'll be one less violation of the immigration laws, and that would be relevant to a discretionary determination for cancellation of removal. I know this court doesn't have jurisdiction to make, to review discretionary decisions. However, one less immigration law. Wait a moment. How would he be eligible if he didn't contest the other ground of removal? Well, the only reason, at least from this record, that he's ineligible, is because there's a bar to receiving cancellation of removal based upon a prior grant of relief. In this case, Mr. Perez was in deportation proceedings initially, not because he committed a criminal offense, but because he was an undocumented alien. That's all. No, but the question is, what difference does all that make if he's removable for having committed a moral turpitude offense? Well, the difference... He's going to be removed anyway, right? On that ground. At the removal stage, yes. But then the second stage is the relief stage. What we're saying is that the bar violates equal protection because it differentiates between similarly situated aliens. I'm finished. I'm sorry. For example, initially, Mr. Perez applied for suspension. He had no criminal convictions. He's in the same position as somebody that is before the immigration judge applying through a family member, doing adjustment of status. He's in the same position as somebody applying for NACARA. All of those people not having any criminal convictions. So if a NACARA beneficiary or a person that adjusts status can later commit a crime and then be eligible for cancellation or 212C, then Mr. Perez should also be eligible to receive the same treatment because he was in the same position. He didn't have any crimes. His only violation of the immigration laws was that he was undocumented. Okay. Just a second. I want to make sure I understand what you're saying here. Judge Tsushima asked you, there are two crimes in his criminal history that disqualify him from removal. One is the trafficking and the other is moral turpitude, right? Well, he has one conviction. That conviction was determined to be a crime involving moral turpitude. Now, the other one, the other ground is not based on a criminal conviction. The other ground is that there was reason to believe at the time. No, I understand. The moral turpitude one, that's what I'm talking about. You're saying that even though he goes back, if we were to agree with you on the first, and forget about the equal protection basis at this moment, if he went back for the discretionary review with just the moral turpitude, he would still be eligible for discretionary relief? Yes. I mean, there's never been a finding that a criminal offense is an aggravated felony that would bar cancellation of removal. The moral turpitude one? Yes. Okay, fine. And therefore, why shouldn't we remand this case for a determination of whether the BIA agrees or disagrees he's been here long enough and is entitled to discretionary relief rather than deciding the constitutional question now? Because if you're right that he's eligible for relief and should get it, then the Ninth Circuit doesn't have to decide constitutional equal protection. I totally agree, Your Honor. We would be more than satisfied with the remand, and I think that is a determination that the BIA should make because it does involve additional fact-finding. This is a reviewing court. This court doesn't engage in fact-finding, so a remand would definitely be appropriate in this particular case. Okay. Do you want to save the rest of your time for a rebuttal? Yes, for a rebuttal, please. Thank you. Excuse me. Good morning. My name is James Grimes, and I'm here on behalf of the Attorney General. Your Honor, in response to our motion to dismiss, and I apologize for filing that just a week ago. Yeah, that does. That's regular. It doesn't look good. It doesn't help us much either. Yes, I understand that, and I apologize for that. I recognize there was a problem last Thursday, filed the motion the next day, recognizing the court would not be happy, and so I do apologize for that. What happened? Were you just assigned this case recently? I was assigned this case last month, and the next case we're arguing and preparing those cases. You didn't write the brief, did you? I didn't write the brief in this case, no, Your Honor. And as I was preparing it, it occurred to me Thursday that there was a problem. I consulted with colleagues and filed the motion the next day. Okay. There are other options in any event. Mr. Perez doesn't contest that the removability issue is moot, so really just looking at the cancellation issue, Judge Wolff, you said, why not remand? But the problem is, as Mr. Perez concedes, he is ineligible under the C6 bar, so he would have to address the constitutional issue before sending it back. The problem is he's never applied for cancellation removal. He's never put this issue in play. He didn't raise any sort of eligibility issue before the board. What is that, sort of like an exhaustion argument? It is sort of like an exhaustion argument. I realize that the board wouldn't have jurisdiction to consider the exhaustion, excuse me, the constitutional challenge, but you do have to put the issue in play and allow the board to deny. And as we've said in our motion, the board might well have said, well, the stop time rule. Well, how do we know at this point he didn't put it in play? I'm prejudiced by your late filing, and I have considerable sympathy for Petitioner's counsel, because I was a United States district judge until Tuesday, and for the last couple of days I've been a Ninth Circuit judge. But when you put an issue at the heart of the case years after its brief, I don't have the confidence I would like to have that it wasn't in play. If we remand this and the BIA says that argument's waived because it wasn't timely raised, presumably you'll brief it again and we'll face the constitutional question. But I didn't get the impression from Petitioner's counsel that he acknowledges he didn't timely raise the issue or wouldn't be entitled to some kind of discretionary consideration of the issue. Well, I would invite your attention, Your Honor, to the brief that was filed before the board. It's not addressed at all. The only mention of the issue at all is when his counsel said that Mr. Perez is not eligible, and he moved on from there. And so the reason that none of this is in the record is because he didn't put an issue. He just moved on. So I'm not eligible, so we're going to move on to something else. In fact, I think it's page 71. He says to the immigration judge, let's move on to the issue. I think he said voluntary departure. So the reason none of this is in the record is because he didn't present it. And usually it's my understanding that if you want to raise a constitutional challenge to a statute, you have to have it denied for some reason. Well, does the BIA have the authority to decide a constitutional issue? No, it doesn't. That's right, as I said. But the BIA would have the authority to determine whether or not he's eligible, and as we pointed out, there are at least two reasons that could apply. And the only reason we don't know which one that the board would have picked is because he never put it in issue. I'll have to educate myself on the legal implications of this, but there's a certain irony of the government coming in years after the matter's been briefed and asking for a decision on a new basis and then saying the petitioner didn't raise something in a timely manner. I understand what you're saying, Your Honor, and I agree with you. If it weren't a jurisdictional, constitutional, Article III issue, I wouldn't have raised it. I don't like doing things in this fashion. Could you address the standing issue? Well, the standing issue is he's never applied for cancellation. He's never had a denial of cancellation from the board on this issue. So what he's essentially done is he's raised an issue that he didn't raise below. He's picked what he thinks is a ground he can defend, but we don't know that that's the ground that the board would have picked because he didn't raise it. All I'm saying is that if he can pick an issue he hasn't raised below, an application for relief he didn't raise below, and pick the ground that he thinks he can defend, then the attorney general should be able to respond. But wait a minute. He did raise the equal protection ground against the statutory provision that was invoked, right? But he invoked that and said, I'm not going to apply because of that. So I think it would be as if he said, well, I think that there's a constitutional problem with the adjustment statute or with one of the other waiver statutes. Well, he never applied for it. We don't know that the board would have even invoked that provision. The board could have invoked the stop time rule. So we don't know what the board would invoke because he never exhausted, at the threshold, the issue of his eligibility before the board, and that's what we're saying. But even if you get to the equal protection argument, he's not similarly situated to, he compares the statute to the adjustment bar, to the adjustment statute, the asylum statute. Asylum has a successive asylum bar. And the asylum statute and the adjustment statute serve different purposes. They have different requirements. And I think it's very well possible that Congress could have said, you know, with this form of relief, it's an act of grace, and giving this form of relief or its predecessors, when doing that, once is enough. And if you've abused the privilege of this relief, you don't deserve it. Again, because after all, there is a limit on the number of people who can receive cancellation each year. It's in subsection E of the cancellation statute. So Congress might have said, well, let's prioritize. People who have gotten this sort of relief before don't deserve a second shot at it. And I would like to add that people who received special rule cancellation or removal are, in fact, subject to the bar. If you look at the special rule cancellation provision, which is in the rear of Section 309F, it says that people who receive that are, the statute is subject to the Immigration and Nationality Act with three exceptions in the cancellation statute, and the C6 bar is not one of those exceptions. So Mr. Perez is incorrect in saying that people who receive special rule cancellation or removal would not be barred. Your Honor.  So in any event, because he never put the issue of cancellation in play, and because his removability issue is moot because he will still be removable as he concedes, we would ask you to dismiss the petition for review. And if you don't do that, then we would ask that you deny the petition for review. All right. I'm happy to entertain any other questions. Thank you, Your Honor. Thank you. As to whether the issue was raised, there is a document in the record, it's at page 148, where Mr. Perez's former lawyer indicates to the immigration judge, quote, depending on ruling on motion to terminate, respondent may be eligible for cancellation of LPR, meaning lawful permanent resident, end quote. Now, I think the government's, the respondent's suggestion that Mr. Perez lacks standing is more of an exhaustion argument, like the court raised earlier. Now, I do have a case I would like the court to consider. It's called Garberding v. INS. It's 30 after 1187. Now, in that particular case, at footnote one, the Ninth Circuit states, Garberding, who was the petitioner in that case, raised the equal protection issue for the first time in this appeal. Generally, failure to raise an issue with the BIA constitutes a failure to exhaust administrative remedies and deprives this court of jurisdiction to consider the issue and cite some cases. Then, the Ninth Circuit says, however, because the BIA does not have jurisdiction to adjudicate constitutional issues, we will consider constitutional claims not raised before the BIA unless the claim involves procedural errors correctable by the administrative tribunal. Here, Mr. Perez is making a challenge to the statute itself as applied to him. Therefore, the BIA would not have jurisdiction to entertain such a claim. It would be this court. You said earlier you'd be satisfied with a remand. If we remanded the case and left open for the BIA to decide in the first instance whether this eligibility for cancellation question had been properly presented, would that be appropriate? Yes, definitely, if the court remanded for them to make that determination. And I think, yes, the BIA should make that determination. It does require more fact-finding. And I'll submit on that, Your Honors. Thank you very much. Thank you, Counsel. The case is submitted. Next case on calendar is Barberito-Perez-Mejia v. Holder.
judges: Wolf, Tashima, Fisher